UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-20204-CIV-MARTINEZ/AOR

CANES BAR & GRILL OF SOUTH
FLORIDA, INC., a Florida corporation,

    Plaintiff,

v.

SANDBAR BAY, LLC, a Florida limited
liability company; ALBERTO BORRERO,
an individual; and JOSEPH LONGO, an
individual,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court upon Plaintiff Canes Bar & Grill of South Florida, Inc.'s ("Plaintiff" or "Canes") Motion for Preliminary Injunction [D.E. 5]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 6]. The undersigned held an evidentiary hearing on this matter on February 27, 2018 [D.E. 30]. For the reasons stated below, the undersigned respectfully recommends that the Motion for Preliminary Injunction be DENIED.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on January 17, 2018 with the filing of a Verified Complaint against Defendants Sandbar Bay, LLC ("Sandbar Bay"), Alberto Borrero ("Borrero") and Joseph Longo ("Longo") (collectively, "Defendants") asserting the following claims:

    Count I:      Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a)

    Count II:     Florida Trademark Infringement under Florida Statute § 495.131

    Count III:    Common Law Trademark Infringement

1

Count IV: Common Law Unfair Competition

Count V: Trademark Dilution under Florida Statute § 495.151

See Compl. [D.E. 1]. Plaintiff predicates its claims on the use and trademark registration in Florida of the name "Sandbar Sports Grill" (hereafter, "Sandbar Name") and the life preserver design pictured below (hereafter, "Sandbar Logo") (collectively, "Sandbar Marks") in connection with bar and restaurant services.



See Motion for Preliminary Injunction [D.E. 5 at 9]. Plaintiff contends that Defendants are using the Sandbar Marks, including the logo pictured below, in connection with the same goods and services as Plaintiff at Defendants' Sandbar Sports Grill in Cutler Bay.



Id.  Plaintiff requests issuance of a preliminary injunction that: prohibits Defendants from using the Sandbar Marks; mandates them to remove all allegedly infringing content from their business, signage, marketing materials, and Internet postings (including social media); and mandates them to publish a disclaimer of any association with Plaintiff.  Id. at 2.

The following individuals testified at the February 27, 2018 evidentiary hearing: Plaintiff's principal, Michael Scott Perrin ("Perrin"); Longo; and Borrero.  The following items were admitted into evidence: Plaintiff's Exhibits Nos. 1-6; and Defendants' Exhibits Nos. 1-11

Having considered the testimonial and documentary evidence presented at the February 27, 2018 evidentiary hearing, and having conducted a thorough review of the parties' written submissions and the relevant legal authorities, the undersigned concludes that Plaintiff failed to meet its burden of demonstrating that it is entitled to the issuance of a preliminary injunction.

## STANDARD OF REVIEW

"An injunction is an equitable remedy, available only when there is no adequate remedy at law."  Weaver v. Florida Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999) (citing Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1527 (11th Cir. 1994).  A plaintiff seeking a preliminary injunction must demonstrate by a preponderance of the evidence that: (1) there is a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury exists if an injunction is not granted; (3) the threatened injury to the plaintiff outweighs any harm that an injunction may cause the defendants; and (4) issuing the injunction will not disserve the public interest.  Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995).  A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the "burden of persuasion" as to all four elements.  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).  "The goal of a preliminary injunction is to prevent

irreparable harm in order to preserve the district court's power to render a meaningful decision after a trial on the merits." Learning Experience Sys., LLC v. Foxborough Child Care, LLC, No. 10-80561-CIV, 2010 WL 3565712, at *4 (S.D. Fla. Aug. 19, 2010) (citing Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)), report and recommendation adopted, 2010 WL 3565708 (S.D. Fla. Sept. 9, 2010). See also Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 525 (S.D.N.Y. 2009) ("[A] preliminary injunction is a remedy that is directed toward preventing conduct during the pendency of the lawsuit.").

The first element, substantial likelihood of success on the merits, is generally regarded as the most important because granting a motion for preliminary injunction would be inequitable if the movant does not have a chance of success on the merits. See Learning Experience, 2010 WL 3565712, at *4 (citing Butler v. Alabama Judicial Inquiry Comm'n, 111 F. Supp. 2d 1224, 1229-30 (M.D. Fla. 2000); Callaway, 489 F.2d at 572; Gonzalez v. Reno, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000)). As to the second element, "irreparable harm, a movant must show that the injury cannot be undone through monetary remedies." Anago Franchising, Inc. v. CHMI, Inc., No. 09-60713-CIV, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009). Further, the irreparable injury claimed "must be neither remote nor speculative, but actual and imminent." Id. (citing Siegel, 234 F.3d at 1176).

## FINDINGS OF FACT

**A.  Perrin**

1.  Canes has operated a sports bar known as Sandbar Sports Grill, Sandbar or Sandbar Grill in Coconut Grove since 1999.

2.  Perrin became the President of Canes in 2013 when he gained control of the majority of the shares in the company through the shares owned by him (31%) and those owned

by his father, Terry Perrin (20%). The other shareholders of Canes are Borrero and Richard M. Gentile a/k/a Matthew Gentile ("Gentile"). See Def's Ex. 1 at 15-16.

3. Perrin had previously acquired shares of Canes in 2008, at which time he was aware that Longo was the original founder of the Sandbar Sports Grill in Coconut Grove.

4. The Sandbar Sports Grill in Coconut Grove uses the logo depicted above and the slogans "Home of the Fish Taco," and "Get Rescued from Ordinary Food."

5. The Sandbar Sports Grill in Coconut Grove has won dozens of awards from various local newspapers and blogs. It has won the New Times Sports Bar of the Year Award multiple times, including as recently as 2017.

6. Because these awards encompass the Miami area and both the Sandbar Sports Grill in Coconut Grove and the Sandbar Sports Grill in Cutler Bay are located in Miami, the two establishments compete for the same awards for the best sports bar in Miami.

7. The Sandbar Sports Grill in Coconut Grove has a widely known promotion, called the Five Pound Burrito Challenge, that has been covered by several media outlets and was named the top eating challenge in all of South Florida.

8. Canes registered the Sandbar Name and the Sandbar Logo with the State of Florida on July 28, 2017 as marks used since May 25, 1999 in connection with bar and restaurant services. See Pl's Exs. 1 & 2.

9. The Sandbar Sports Grill in Coconut Grove uses the Sandbar Logo in its menu, with the slogan, "Get Rescued from Ordinary Food" printed above the logo. See Pl's Ex. 3. The slogan is also printed on a sign that hangs over the bar. The menu also features five categories of a rum drink named "Hurricanes." Id.

10. The Sandbar Sports Grill in Coconut Grove maintains social media accounts with

Instagram, Twitter and Facebook. The undersigned admitted a group of social media posts and emails from those accounts referencing the Sandbar Sports Grill in Cutler Bay only for the fact that they were received by Perrin. However, the undersigned sustained Defendants' hearsay objection and did not admit the social media posts and emails as evidence of confusion. See Pl's Ex. 4.

11. The Sandbar Sports Grill in Coconut Grove markets itself on local radio by hosting a coaches' radio show and advertising in a dozen radio spots. Other marketing strategies include: advertising in the Miami Hurricanes program guide, sponsoring a lane at the University of Miami Hall of Fame Tournament, and placing ads on Facebook, Twitter and Instagram.

12. According to Perrin, in the thirty days preceding the evidentiary hearing, the Sandbar Sports Grill in Coconut Grove experienced a drop of between 20 to 40 percent in the number of posts and marketing images seen by customers.

13. Perrin is concerned that any negative publicity regarding inspections of the Sandbar Sports Grill in Cutler Bay would affect the reputation of the Sandbar Sports Grill in Coconut Grove because both are in the same market.

14. When he first acquired shares of Canes in 2008, Perrin was aware that Longo had opened a Sandbar Sports Grill in Cocoa Beach, Florida in 2004, which is still open and uses the same logo as the Sandbar Sports Grill in Coconut Grove, with the words Cocoa Beach instead of Coconut Grove at the bottom and a slightly different design at the center of the life preserver. See Def's Ex. 7.

15. Perrin never has and does not presently object to the operation of the Sandbar Sports Grill in Cocoa Beach; and has not brought any legal action against this restaurant. In response to an inquiry from a principal of the Sandbar Sports Grill in Cocoa Beach regarding the

filing of a trademark registration for the Sandbar Marks, Perrin replied, "As far as Cocoa Beach is concerned, my intention is absolutely nothing at all." See Def's Ex. 4 at 4.

16. The Sandbar Sports Grill in Cocoa Beach does not compete for the same awards as the Sandbar Sports Grill in Coconut Grove. Also, the distributors of beer and other merchandise for the Coconut Grove and Cocoa Beach locations are different.

17. When he acquired additional shares of Canes in 2013, Perrin was aware that Longo had opened a Sandbar Sports Grill in Kendall, across from Miami-Dade College. That restaurant remained in business for approximately one year.

18. Perrin is also aware that Longo and Borrero opened a Sandbar Sports Grill in Key West in 2016, which is still open and uses the same logo as the Sandbar Sports Grill in Coconut Grove with the words Key West instead of Coconut Grove at the bottom and a slightly different design at the center of the life preserver. See Def's Ex. 8.

19. Perrin, on behalf of Canes, had no objection to the opening of this restaurant. In fact, on February 11, 2016, Perrin sent a congratulatory email to Borrero on its opening. See Def's Ex. 2.

20. The Sandbar Sports Grill in Key West does not compete for the same awards as the Sandbar Sports Grill in Coconut Grove and the newspapers in Miami and Key West are different. Also, the merchandise distributors for Coconut Grove and Key West are different.

21. On May 31, 2013, Perrin and the other shareholders of Canes entered into an Amended and Restated Shareholder Agreement (hereafter, "Shareholder Agreement"). See Def's Ex. 1. Perrin signed the agreement individually and as President of Canes. Id. at 14.

22. Paragraph 11.8 of the Shareholder Agreement provides:

> **Other Businesses**. The Shareholders acknowledge and agree that each Shareholder is involved in other business ventures. No Shareholder is obligated

7

>   to offer to the Company or the other Shareholders of the Company any interest in an (sic) current or future business venture of any kind.  No Shareholder, without consent of the other Shareholders, shall engage in a business which operates under the name "Sandbar Grill", "Sandbar Sports Grill", "Sandbar", or similar name within a 10 mile radius of the Company.  Subject to the foregoing limitation, this Agreement, or participation as a Shareholder, officer or director of the Company, shall give no Shareholder of the Company an exclusive right, license or otherwise to the trade name "Sandbar Grill", "Sandbar Sports Grill", "Sandbar", or similar name variation.

Id. at 10.

23. Perrin acknowledged that the Sandbar Sports Grill in Cutler Bay is located over ten miles from the Sandbar Sports Grill in Coconut Grove.

24. Perrin claimed that he had nothing to do with the decision regarding the ten-mile restriction in Paragraph 11.8 of the Shareholder Agreement.  According to Perrin, the attorney drafting the Shareholder Agreement was the one who wrote ten miles in Paragraph 11.8, and all the shareholders went along with it.

**B.      Longo**

25. Longo developed the concept of the Sandbar restaurants in San Diego, California.  Longo and his partner opened two restaurants there and looked for additional locations in California and Florida.[1]  They found the Coconut Grove location and initially intended to call the restaurant "Canes Bar and Grill," but the University of Miami objected so they came up with the Sandbar Name.

26. Longo incorporated Canes in 1999 and filed the original fictitious name registration for "Sandbar Grill & Cantina" that same year.  See Def's Ex. 5.

27. Longo also was involved in the opening of the Sandbar Sports Grill in Cocoa Beach.  He owns the property where the restaurant is located.  He initially owned 20 percent of

---

[1] In preparation for the evidentiary hearing, Longo wrote a list of the restaurants in which he has been involved.  See Pl's Ex. 5.

the business and gave the other 80 percent to two of his associates from the Sandbar Sports Grill in Coconut Grove.  However, between 2010 and 2013, Longo sold his 20 percent interest in the business.

28.	In 2005, Longo filed the fictitious name registration for the Sandbar Sports Grill in Cocoa Beach.  See Def's Ex. 6.

29.	Longo designed the Sandbar Logo for the Coconut Grove, Cocoa Beach and Key West locations.  See Def's Ex. 7.  He varied the picture at the center of the life preserver for each restaurant to match each location and what is around it.  Id.

30.	In 2013, Longo decided to move out of Miami for personal reasons and to sell his shares in Canes.  At that time, Borrero was a shareholder in Canes.

31.	Longo negotiated the purchase price and the terms for the sale of his shares in Canes with Perrin.

32.	The day before the closing, Longo received a packet of documents to sign.  The packet included a document that prohibited Longo from using the Sandbar Marks in any way, shape or form.  Longo could not sign that document because he was already operating a Sandbar Sports Grill in Kentucky, was in the process of opening one in Stuart, Florida, and was planning to open others.[2]

33.	At the closing on May 31, 2013, Longo told Perrin and the other Canes shareholders who were present that he wanted to use the Sandbar Name; and he refused to sign the document he had received prior to the closing.  The shareholders got together and agreed on a new document entitled Sale, Transfer and Assignment, and Covenant not to Compete (hereafter, "Covenant").  See Def's Ex. 3.  Longo signed the Covenant as "Seller" and had it notarized that

---

[2]  Longo did sign on May 30, 2013 a Stock Assignment for his 250 shares in Canes, which he sold as follows: 46 2/3 to Borrero; 115 to Gentile; 66 2/3 to Perrin and 21 2/3 to Terry Perrin.  See Pl's Ex. 6.

same day. Id. There are no other signatories to the Covenant. Id.

34. In addition to the language assigning Longo's shares of Canes to Borrero, Gentile, Perrin and Terry Perrin (collectively referred to as "Buyer"),[3] the Covenant contains the following provision:

> The undersigned further assigns, sells and transfers to Buyer all his rights, title and interest to the trade name "Sandbar", "Sandbar Grill", "Sandbar Sports Grill", "Sandbar Bar & Grill", "Sandbar Sports Bar", and any similar variations thereof (hereinafter the "Name"), except however Seller shall retain the right(s), royalty f[r]ee, to use the Name on an unlimited basis, without restriction and without the consent of Buyer, outside the Restricted Area (as defined below) in connection with any business, bar, restaurant or establishment including, but not limited to, any business or establishment in which all or any of Buyers(s) are not involved. Seller shall not use the Name in connection with the operation of a bar, restaurant, or similar establishment within a ten (10) mile radius of 3064 Grand Avenue, Coconut Grove, Florida (the "Restricted Area").

Id. Longo considered this provision to be a license for him to use the Sandbar Name outside the ten mile radius prescribed as the Restricted Area. Therefore, Longo and Borrero are using the Sandbar Name at the Cutler Bay location. Longo did acknowledge that he has never done business using the Sandbar Name or used the Sandbar Logo personally and has always used the Sandbar Marks as part of an entity.

35. The Covenant further provided:

> In further consideration of the sums paid to Seller in connection with the purchase of Sellers interest in the Corporation, and to induce Buyer to enter into said purchase, Seller will not be involved in any way, as an owner, shareholder, member, employee, officer, director, contractor, consultant, or otherwise, in the operation or ownership of a restaurant/bar within the neighborhood commonly known as Coconut Grove, Florida for a period of not less than 3 years after the date set forth below. Seller acknowledges that this provision is a material term and induced Buyer to purchase Seller's interest in the Corporation pursuant to that Stock Purchase Agreement dated February 28, 2013.

Id. This provision was required by Perrin in his capacity as President of Canes.

36. Longo operated the Sandbar Sports Grill in Kendall in 2008 using the Sandbar

---

[3] The number of shares assigned to each is the same as shown in the Stock Assignment. Id.

Logo. At the time, Perrin was a shareholder of Canes and had no objections to the operation of the Sandbar Sports Grill in Kendall.

37. Longo opened the Sandbar Sports Grill in Stuart in 2013. Longo sold the restaurant at the end of 2014. During that time, Perrin was a shareholder of Canes and he did not object to the operation of the Sandbar Sports Grill in Stuart. Longo uses a very similar logo to the Sandbar Logo, featuring a surfboard, on the restaurant's menu.

38. Longo decided to open the Sandbar Sports Grill in Key West in 2016. The menu for that restaurant features the Sandbar Logo. See Def's Ex. 8. Longo uses the slogan "Home of the Fish Taco" and offers a Three Pound Burrito Challenge at that location. Id.

39. The Sandbar Sports Grill in Cocoa Beach also uses the slogan "Home of the Fish Taco" and offers a Five Pound Burrito Challenge

40. The rum drinks named "Hurricanes" are also offered at the Key West and Cocoa Beach locations. Other restaurants in the immediate areas do not offer such drinks.

41. Longo is aware of other restaurants using the name "Sandbar" in Big Pine Key, Islamorada, and another location in the Florida Keys. Longo is also aware of "Sandbar" restaurants at the following Florida locations: Fort Myers, Clearwater Beach, and the Contemporary Hotel in Disney World.[4]

42. In December 2017, an entity named Sandbar Subs LLC located in Kansas complained about attempts to obtain federal trademark registration for the Sandbar Sports Grill in Cocoa Beach and the Sandbar Sports Grill in Key West and accused those entities of trademark infringement on its own "SANDBAR" mark. See Def's Ex. 9 at 1-3. The firm of Malloy & Malloy, P.L. responded to the complaint, and no further action has occurred. Id. at 4-

---

[4] Longo personally knows about two of the locations in the Florida Keys (he stopped to eat at one of them) and about the one in Fort Myers. He is not aware of any of these entities using a logo similar to the Sandbar Logo or the slogan "Get Rescued from Ordinary Food" or of them having a Burrito Challenge.

7. Borrero handled this matter, and Longo was not involved in it.[5]

43. Longo and Borrero found the location and started negotiating a lease for the Sandbar Sports Grill in Cutler Bay in June 2017 and opened the restaurant in January 2018. The restaurant uses the Sandbar Logo with a different picture inside the life preserver on its menu. See Def's Ex. 10.

44. Longo believes that he and Borrero are within their rights to operate the Sandbar Sports Grill in Cutler Bay because they have honored the ten-mile restriction set forth in Paragraph 11.8 of the Shareholder Agreement.

45. Prior to the opening of the Sandbar Sports Grill in Cutler Bay, there had been no issues with Perrin or Canes about Longo's operation of other Sandbar restaurants, and all the Sandbar restaurants had peacefully coexisted. Longo learned of Canes' trademark registration of the Sandbar Marks in Florida after the opening of the Sandbar Sports Grill in Cutler Bay.

**C.     Borrero**

46. Borrero first became a shareholder of Canes in 2008 when he purchased Longo's original partner's shares.

47. Borrero acquired additional shares of Canes in 2013 at the time he signed the Shareholder Agreement. Borrero acknowledged that the Shareholder Agreement does not address the Sandbar Logo or the slogan "Get Rescued from Ordinary Food."

48. Borrero believes that he is subject to the ten-mile restriction set forth in Paragraph 11.8 of the Shareholder Agreement, but that he can use the Sandbar Name outside the ten-mile radius.

49. According to Borrero, the ten-mile restriction in the Covenant and in Paragraph

---

[5] Although there is a reference to licenses in the Malloy & Malloy, P.L. response, Longo is not aware of any license agreement executed by Canes for the use of the Sandbar Marks.

11.8 of the Shareholder Agreement reflected the shareholders' concern, not only with Coconut Grove, but also with the nearby Brickell area.

50. Borrero remembers that the attorney at the closing typed up the Covenant, and that, once Longo signed it, the Covenant became part of the closing package.

### D. Judicial Notice

51. The undersigned takes judicial notice of a Florida Division of Corporations search result for entities that include the words "Sandbar" and "Sand Bar" and for entities that have registered fictitious names that include those words. See Def's Ex. 11.

52. The search shows that there are numerous entities and several fictitious registrations that include the words "Sandbar" and "Sand Bar." Id.

## CONCLUSIONS OF LAW

As previously noted, in order for Canes to prevail on its Motion for Preliminary Injunction, it must show by a preponderance of the evidence: (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) balancing of the equities favors issuance of the injunction; and (4) the public interest will not be disserved. Levi Strauss, 51 F.3d at 985.

### A. Substantial likelihood of success on the merits

Canes' request for preliminary injunctive relief is predicated on its claims for Florida and common law trademark infringement, which Plaintiff acknowledges must be examined in accordance with Lanham Act jurisprudence. See Motion for Preliminary Injunction [D.E. 5 at 6-7].[6] In order to establish a prima facie case of trademark infringement under the Lanham Act, a plaintiff must show that it had enforceable trademark rights in the mark, and that the defendant made "unauthorized use of it such that consumers were likely to confuse the two." Custom Mfg.

---

[6] Although Plaintiff states in its Motion for Preliminary Injunction that it is "Likely to Succeed on the Merits of its Trademark Infringement, Unfair Competition, and Trademark Dilution Claims," id. at 6, it only goes on to address the trademark infringement claims. Id. at 6-14.

& Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997)).

Initially, the undersigned notes that Plaintiff has enforceable rights in the Sandbar Marks by virtue of its continued use of the Sandbar Marks since the opening of the Sandbar Sports Grill in Coconut Grove in 1999. Defendants argue, however, that their use of the Sandbar Marks was authorized by Paragraph 11.8 of the Shareholder Agreement and the Covenant because the Sandbar Sports Grill in Cutler Bay is outside the "Restricted Area," that is, more than ten miles from the Sandbar Sports Grill in Coconut Grove. See Defendants' Opposition to Motion for Preliminary Injunction (hereafter, "Opposition") [D.E. 27 at 11]. Plaintiff counters that, at most, the authorized use beyond the Restricted Area only applies to the Sandbar Name because that is the only item mentioned in the Shareholder Agreement and the Covenant. See Reply to Defendants' Opposition (hereafter, "Reply") [D.E. 36 at 8].[7] On this basis, Plaintiff seeks a narrowed preliminary injunction protecting the Sandbar Logo, and the slogans (which it characterizes as trade dresses). Id. Given the limited impact, if any, of the Shareholder Agreement and the Covenant, the undersigned will assume unauthorized use of the Sandbar Marks and proceed to address likelihood of confusion.

In the Eleventh Circuit, likelihood of confusion is based on the following seven factors: (1) the type of mark, specifically whether the mark qualifies as generic, descriptive, suggestive, or arbitrary; (2) the similarity of the marks based on their overall impressions; (3) the similarity of the goods; (4) the similarity of the parties' respective retail outlets, trade channels, and customers; (5) the similarity of types of advertising; (6) the intent of the defendant; and (7) actual confusion. Custom Mfg. & Eng'g, 508 F.3d at 648 (citing Frehling Enters., Inc. v. Int'l Select

---

[7] The undersigned notes, however, that Plaintiff provides no rationale for treating "Get Rescued from Ordinary Food," "Home of the Fish Taco," "Five Pound Burrito Challenge," and "Hurricanes" as trade dresses of any particular product worthy of protection.

Grp., Inc., 192 F.3d 1330, 1335-41 (11th Cir. 1999)). "Of these, the type of mark and the evidence of actual confusion are the most important." Frehling Enters., 192 F.3d at 1335.

### i. *Type of mark*

There are four types of marks: generic, descriptive, suggestive, and arbitrary. Id. These marks are entitled to various levels of protection, with arbitrary marks being the strongest and entitled to the most protection, and generic marks being the weakest and not entitled to protection. Id. at 1335-36.

Generic marks "refer to a class of which an individual service is a member (e.g. 'liquor store' used in connection with the sale of liquor)." Id. at 1335.

Descriptive marks "describe a characteristic or quality of an article or service (e.g. 'vision center' denoting a place where glasses are sold)." Id. "If the mark is merely descriptive, such as a personal or surname, its strength depends on whether it has acquired secondary meaning." Tana v. Dantanna's, 611 F.3d 767, 776 (11th Cir. 2010). A mark has acquired secondary meaning when "the consuming public associates the services with a particular provider." Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 938 (11th Cir. 2010). To determine whether a descriptive mark has acquired a secondary meaning, a court looks to: "[t]he length and nature of the name's use;" "the nature and extent of advertising and promotion of the name;" "the efforts of the proprietor to promote a conscious connection between the name and the business;" and "the degree of actual recognition by the public that the name designates the proprietor's product or service." Tana, 611 F.3d at 776 (citing Welding Servs. Inc. v. Forman, 509 F.3d 1351, 1358 (11th Cir. 2007)). "A descriptive mark with secondary meaning is a relatively strong mark." Id.

Suggestive marks "suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, 'penguin' would be suggestive of refrigerators." Frehling Enters., 192 F.3d at 1335.

Arbitrary marks are "word[s] or phrase[s] that bear[] no relationship to the product (e.g. 'Sun Bank' is arbitrary when applied to banking services)." Id.

Plaintiff argues that the Sandbar Marks are "at least suggestive with acquired distinctiveness" and may even be "arbitrary." See Motion for Preliminary Injunction [D.E. 5 at 10 & n.1]. Defendants counter that the Sandbar Marks are generic. See Opposition [D.E. 27 at 13]. The undersigned concludes that the Sandbar Marks are generic because they use the term "Sports Grill" to describe a sports bar and restaurant. Thus, the Sandbar Marks are the weakest type of mark.

### ii. *Similarity of marks*

Similarity of appearance between two marks "is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Assoc., 651 F.2d 311, 318-19 (5th Cir. 1981). See also Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 502 (5th Cir. 1979) ("It is the overall impression that counts."); Frehling Enters., 192 F.3d at 1337 (In assessing similarity, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used."). As explained by the United States Supreme Court, "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920).

Here, Defendants are using the same name, Sandbar Sports Grill, as the Sandbar Name.

Additionally, the life preserver used by Defendants is the same as the one in the Sandbar Logo, with the only variations being the picture in the center of the life preserver and the location name at the bottom. Therefore, there is a close similarity between the Sandbar Marks and the name and logo used by Defendants for the Sandbar Sports Grill in Cutler Bay.

### iii. Similarity of goods

"Analyzing the similarity of the products the marks represent requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." Caliber Auto., 605 F.3d at 939-40 (citing Frehling Enters., 192 F.3d at 1338). Here, the goods and services offered by Plaintiff and Defendants, namely, restaurant and bar services, are similar.

### iv. Similarity of retail outlets, trade channels, and customers

"The similarity of the parties' retail outlets and customers takes into consideration where, how, and to whom the parties' products are sold." Caliber Auto., 605 F.3d at 940 (citing Frehling Enters., 192 F.3d at 1339). Plaintiff and Defendants use similar retail outlets, namely, restaurants and bars, and cater to similar customers, namely, those who enjoy a sports bar venue for their restaurant experience.

### v. Similarity of advertising media

"The similarity of advertising media factor looks to each party's method of advertising." Caliber Auto., 605 F.3d at 940 (citing Frehling Enters., 192 F.3d at 1339). Although Plaintiff proffered testimony from Perrin regarding its advertising media, it presented no evidence regarding what advertising media Defendants use. Therefore, there is no basis for ascertaining any similarity of advertising media.

### vi. Defendants' intent

"When analyzing an alleged infringer's intent, [the Court] must determine whether the defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." Caliber Auto., 605 F.3d at 940 (citing Frehling Enters., 192 F.3d at 1340). In this case, Defendants acted under the belief that they could operate a Sandbar Sports Grill so long as it was located outside the ten-mile Restricted Area. Defendants complied with this restriction by locating their restaurant in Cutler Bay outside the ten-mile radius. Moreover, Defendants were aware that other Sandbar Sports Grills using the Sandbar Logo had been operating in Cocoa Beach and Key West for some time without any objection from Canes or Perrin. Given these circumstances, there is no basis to attribute to Defendants the intent to profit from Canes' business reputation, rather than to run their own parallel business like the operators of the Cocoa Beach and Key West locations were doing.

### vii. Actual confusion

Defendants' hearsay objection to Plaintiff's submission of social media postings was sustained. Therefore, Plaintiff failed to adduce any admissible evidence of actual confusion.

### viii. Analysis

Three factors (similarity of marks, goods and retail outlets) favor Plaintiff. The remaining four factors favor Defendants since the Sandbar Marks are the weakest type of mark, and there is no basis for finding similarity of advertising, improper intent and actual confusion. Taking into account all seven factors, Plaintiff has not made out a *prima facie* case of likelihood of confusion, given that the type of mark and the evidence of actual confusion are the most important factors. Frehling Enters., 192 F.3d at 1335. Hence, Plaintiff has failed to establish by a preponderance of the evidence that it has a substantial likelihood of success on the merits.

18

Nevertheless, in an abundance of caution, the undersigned will address the remaining three factors of the injunctive relief calculus.

## B. Irreparable harm

To establish this element, Plaintiff must show that the injury it has sustained "cannot be undone through monetary remedies" and that such injury is "neither remote nor speculative, but actual and imminent." Anago Franchising, 2009 WL 5176548, at *11. Given the lack of evidence of actual confusion, Plaintiff has not established by a preponderance of the evidence irreparable harm to its reputation in the restaurant and bar business.

## C. Balancing of the equities

Given Plaintiff's failure to establish likelihood of success on the merits and irreparable harm, the harm to Plaintiff from the continued operation of the Sandbar Sports Grill does not outweigh the harm to Defendants from the proposed injunction that seeks to prohibit Defendants from using the Sandbar Marks; mandates them to remove all allegedly infringing content from their business, signage, marketing materials, and Internet postings (including social media); and mandates them to publish a disclaimer of any association with Plaintiff.

## D. Public interest

"The public interest is served by eliminating confusion in the marketplace." Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, 703 F. Supp. 2d 1307, 1316 (S.D. Fla. 2010) (citing SunAmerica Corp. v. Sun Life Assurance Co. of Can., 77 F.3d 1325, 1334 (11th Cir. 1996)). Because Plaintiff has not established that Defendants' use of the Sandbar Marks is likely to cause confusion among patrons of sports bars and restaurants, requiring Defendants to rename their Sandbar Sports Grill in Cutler Bay and to stop using the life preserver logo associated with that location would disserve the public interest.

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Plaintiff's Motion for Preliminary Injunction [D.E. 5] be DENIED. The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Jose E. Martinez, United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 27th day of March, 2018.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Jose E. Martinez
Counsel of Record