UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 18-20204-CIV-MARTINEZ-OTAZO-REYES

CANES BAR & GRILL OF SOUTH
FLORIDA, INC., a Florida corporation,

    Plaintiff,

v.

SANDBAR BAY, LLC, a Florida limited
liability company; ALBERTO BORRERO,
an individual; and JOSEPH LONGO, an
individual,

    Defendants.
_____/

## ORDER ADOPTING IN PART AND MODIFYING IN PART
## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court on Plaintiff's Motion for a Preliminary Injunction against Defendants SANDBAR BAY, LLC, ALBERTO BORRERO, and JOSEPH LONGO (collectively, "Defendants") [ECF No. 5]. Defendants subsequently filed a response in opposition [ECF No. 27]. This Court referred all matters relating to Plaintiff's Motion for Preliminary Injunction to the Honorable Magistrate Judge to take all necessary and proper action as required by law with respect to Plaintiff's Motion for Preliminary Injunction [ECF No. 6]. The Magistrate Judge held an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction [ECF No. 30] and issued a Report and Recommendation, recommending that Plaintiff's Motion for Preliminary Injunction be DENIED [ECF No 47]. Plaintiff timely filed its objections to the Report and Recommendation ("Plaintiff's objections") [ECF No. 50] and Defendants also timely filed their objection to the Report and Recommendation ("Defendants' objection") [ECF No. 49].

The Court has reviewed the entire file and record, has made a *de novo* review of the issues that both sets of objections to the Report and Recommendation present and is otherwise fully advised in the premises.

## I. Background

Plaintiff has operated a sports bar in Coconut Grove, Sandbar Sports Grill since 1999 [ECF No. 47 ¶ 4]. On July 28, 2017, Plaintiff "registered the Sandbar Name and the Sandbar Logo with the State of Florida," with said marks having been used "since May 25, 1999 in connection with bar and restaurant services." *Id.* ¶ 8. Sandbar Sports Grill in Coconut Grove includes its logo in its menu and on a sign hanging above the bar. *Id.* ¶ 9. In addition to its logo, Sandbar Sports Grill in Coconut Grove also has the following slogans: "Home of the Fish Taco" and "Get Rescued From Ordinary Food". *Id.* ¶ 4. Since its opening, Sandbar Sports Grill in Coconut Grove has "won awards from various local newspapers and blogs," including the New Times Sports Bar of the Year Award, which it has won multiple times, as recently as 2017. *Id.* ¶ 5. Sandbar Sports Grill has a social media presence, "maintain[ing] social media accounts with Instagram, Twitter, and Facebook" and also markets itself on local radio, advertises in the Miami Hurricanes program guide, and places ads on social media. *Id.* ¶¶ 10-11.

Defendant Longo owned an interest in the Sandbar Sports Grill in Coconut Grove until he decided to move out of Miami for personal reasons in 2013 [ECF No. 48, at 55:9-15]. At that time, Defendant Longo sold his shares to Plaintiff's principal, Michael Scott Perrin ("Perrin"). *Id.* at 59:18-20. Defendant Longo also signed a document titled Sale, Transfer and Assignment, and Covenant, which he considered "a license for him to use the Sandbar name," so long as it was not within a ten-mile radius from the Sandbar Sports Grill in Coconut Grove [ECF No. 47 ¶ 33-34]. Defendant Borrero became a shareholder of Sandbar Sports Grill in Coconut Grove in

2008 [ECF No. 48, at 90:1-5]. In January 2018, Defendant Longo and Defendant Borrero opened Sandbar Sports Grill in Cutler Bay, "us[ing] the Sandbar logo with a different picture inside the life preserver on its menu."[1] *Id.* ¶ 43. Around this time, Plaintiff's principal, Mr. Perrin, "experienced a drop of between 20 to 40 percent in number of posts and marking images seen by customers," and, also claimed that "any negative publicity regarding inspections of the Sandbar Sports Grill in Cutler Bay would affect the reputation of the Sandbar Sports Grill in Coconut Grove because both are in the same market." *Id.* ¶¶ 12-13. Plaintiff filed suit against Defendants and subsequently filed a Motion for Preliminary Injunction which would prohibit Defendants from using Plaintiff's trademark and trade dress, namely Plaintiff's slogan [ECF No. 5].

 

After an evidentiary hearing, the Magistrate Judge recommended Plaintiff's Motion for Preliminary Injunction be denied. Both parties filed objections to the Magistrate Judge's Report and Recommendation. This Court will address each parties' objections.

---

[1] This Court notes that Plaintiff does not seek a preliminary injunction prohibiting Defendants' use of the Sandbar name, rather, Plaintiff seeks to "prohibit Defendants from continuing to infringe on Canes Bar's trademarks and trade dress" [ECF No. 5, at 1]. Accordingly, this Court does not find Paragraph 11.8 of the Shareholder Agreement, in and of itself, to be dispositive of the issues presented in Plaintiff's Motion for Preliminary Injunction. As noted by the Magistrate Judge, the Shareholder Agreement and Covenant are of "limited impact, if any" to the issues raised by Plaintiff's Motion for Preliminary Injunction [ECF No. 47, at 14].

## II. Defendants' Objection to Report and Recommendation

Defendants filed a single objection as to the factual findings contained in paragraph 32 of the Report and Recommendation [ECF No. 49]. While the Court notes that the factual finding is not dispositive or material to Plaintiff's Motion for Preliminary Injunction and that "[f]indings made on an application for preliminary injunction are not controlling at a later hearing on a permanent injunction,"[2] this Court will address Defendants' sole objection. Paragraph 32 of the Report and Recommendation states:

> The day before the closing, Longo received a packet of documents to sign. The packet included a document that prohibited Longo from using the Sandbar Marks in any way, shape or form. Longo could not sign that document because he was already operating a Sandbar Sports Grill in Kentucky, was in the process of opening one in Stuart, Florida, and was planning to open others.

[ECF No. 47]. In their objection, Defendants argue that the day before closing, Defendant Longo received closing documents with no restrictions and it was not until the next day, at closing, that Defendant Longo received a prior version of the stock transfer agreement with a total restriction—a document that Defendant Longo refused to sign because he was already operating a Sandbar and had plans to open another. Defendants specifically included the relevant portions of Defendant Longo's testimony at the evidentiary hearing [ECF No. 49, at 2-4].

A *de novo* review of the evidence elicited at the evidentiary hearing reflects that Defendant Longo signed all the documents the day before the closing, as instructed by the attorney [ECF No. 48, at 55:21-25] and that he could not sign the documents on the day of the closing "A) because [he] already had in operation a Sandbar Sports Grill in Owensboro, Kentucky, which would violate the agreement, and B) [he] planned on opening up one during this time in Stuart Florida" (*id.* at 58:5-10) so they "came up with [a] new document" (*id.* at

---

[2] *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1353 (S.D. Fla. 1998) (citing *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1527 n. 1 (11th Cir. 1985)).

58:11-20). Defendants' objection to the Magistrate Judge's factual finding is limited to the narrow factual finding that Longo chose not to sign the document with a total restriction on the day *before the closing*, rather, he refused to sign it on the day of the closing. For the foregoing reasons, this Court finds that the record reflects that Longo decided not to sign the document *on the day of the closing*.

Accordingly, this Court **SUSTAINS** Defendants' objection and solely modifies the factual finding in paragraph 32 of the Report and Recommendation, to the extent that Longo decided not to sign the document with the total restriction on the day of the closing.

### III. Plaintiff's Objections

In order for Plaintiff to prevail on its Motion for Preliminary Injunction, it must show by a preponderance of the evidence: (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) balancing of the equities favors issuance of the injunction; and (4) the public interest will not be disserved. *Levi Strauss & Co. v. Sunrise Intern. Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Plaintiff objects to the Magistrate Judge's findings with respect to whether Plaintiff has shown, by a preponderance of the evidence, that a preliminary injunction is appropriate under the facts of this case.

#### A. Likelihood of Success on the Merits

In order for Plaintiff to succeed on a claim under the Lanham Act, it must establish a prima facie case of trademark infringement by showing that (1) the plaintiff's mark has priority and (2) the defendant's mark is likely to cause consumer confusion. *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (citations omitted).

##### 1. Priority

Plaintiff does not object to the Magistrate Judge's finding that, "Plaintiff has enforceable rights in the Sandbar Marks by virtue of its continued use of the Sandbar Marks since the

opening of the Sandbar Sports Grill in Coconut Grove in 1999 [ECF No. 47, at 14]. Therefore, this Court adopts and affirms the Magistrate Judge's finding as to Plaintiff's priority use of the Sandbar Marks. As Plaintiff concedes, "the only issue before this Court is whether Defendants' use of the Sandbar Marks at the Cutler Bay location is likely to cause confusion" [ECF No. 50, at 5].

### 2. Consumer Confusion

In the Eleventh Circuit, likelihood of consumer confusion is determined by evaluating the following factors: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendants' intent; and (7) actual confusion. *See Frehling Enters.*, 192 F.3d at 1335. "Of these, the type of mark and the evidence of actual confusion are the most important." *Id*; *see also Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1358 (S.D. Fla. 1998) ("In applying this test, no single factor is dispositive, but in the 11th Circuit, greater weight is given to the type of mark and evidence of actual confusion."). As other courts have noted, "there is nothing magical about these 'factors'; they operate only as a heuristic device to assist in determining whether confusion exists." *Uber Promotions, Inc. v. Uber Technologies, Inc.* 162 F. Supp. 3d 1265-66 (N.D. Fla. 2016) (quoting *Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004)). This "multi-factor 'test' is not really a test at all, but rather a set of things to consider, or questions to ask, en route to the ultimate question" is there 'a likelihood of confusion in the mind[s] of an appreciable number of reasonably prudent buyers [?]" *Id.* at 1266 (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 979 n. 22 (11th Cir. 1983) (citations and internal quotations omitted)).

Moreover, "it is vital to always keep in mind the 'actual market conditions and the type of confusion alleged' when conducting the analysis." *Id.* (quoting *Malletier v. Burlington Coat*

*Factory Warehouse, Corp.*, 426 F.3d 532, 534 (2d Cir. 2005)). Courts must consider these factors because "'real world' confusion is the confusion that the [Lanham] Act seeks to eliminate." *Id.* "The existence of such confusion is best assessed when marks are compared 'in light of the way in which the marks are actually displayed' or perceived by consumers." *Id.* Plaintiff objects to the Report and Recommendation's findings as to all of the above-listed factors with the exception of: similarity of mark, similarity of the products the marks represent, and similarity of the parties' retail outlets (trade channels) and customers [ECF No. 50].

### i. Type of Mark

"The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Frehling Enters.*, 192 F.3d at 1335. There are four types of marks (listed in order of weakest to strongest): generic, descriptive, suggestive, and arbitrary. *Id*. The types of marks are "based on the relationship between the name and the service or good it describes:" generic marks bear a name that is entirely connected to the service or good it describes ("liquor store" as applied to a store that sells liquor), *id.*, and arbitrary marks that bear "a word in common usage applied to a service unrelated to its meaning" ("Sun Bank" as applied to banking services). *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 n.5 (11th Cir. 1985). "Descriptive marks describe a characteristic or quality of an article or service" ("vision center" as applied to a store that sells glasses) and "suggestive marks suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive" ("penguin" is suggestive of refrigerators). *Frehling Enters.*, 192 F.3d at 1335 (citations omitted).

Plaintiff objects to the Report and Recommendation finding that the Sandbar Marks are generic, and argues that the Sandbar Marks are at least suggestive, if not arbitrary [ECF No. 50, at 6]. The Magistrate Judge concluded that the Sandbar Marks are generic because they use the

term "Sports Grill" to describe a sports bar and restaurant [ECF No. 47, at 15]. However, this Court finds that the use of the term "Sports Grill" should not preclude a finding that the Sandbar Marks are arbitrary. Similar to the way "Sun Bank" was categorized as an arbitrary mark because "Sun" bears no relationship to banking services, neither does "Sandbar" bear any relationship to a sports bar and restaurant. *Freedom Sav. & Loan Ass'n*, 757 F.2d at 1182 n.5. This Court therefore agrees with Plaintiff in finding that the Sandbar Marks are arbitrary and deserve the most trademark protection.[3]

Accordingly, this Court **SUSTAINS** Plaintiff's objection.

### ii. Similarity of Mark

Plaintiff does not object to the Magistrate Judge's finding there is "a close similarity between the Sandbar Marks and the name and logo used by Defendants for the Sandbar Sports Grill in Cutler Bay" [ECF No. 47, at 17]. This Court therefore adopts and affirms the Magistrate Judge's finding as to the similarity of the Sandbar Marks and the name and logo used by Defendants for the Sandbar Sports Grill in Cutler Bay.

### iii. Similarity of the Products the Marks Represent

Plaintiff does not object to the Magistrate Judge's finding that "the goods and services offered by Plaintiff and Defendants, namely, restaurant and bar services, are similar" [ECF No. 47, at 17]. This Court therefore adopts and affirms the Magistrate Judge's finding as to the similarity of the goods and services offered by Plaintiff and Defendants.

### iv. Similarity of the Parties' Retail Outlets (trade channels) and Customers

Plaintiff does not object to the Magistrate Judge's finding that Plaintiff and Defendants "use similar retail outlets, namely, restaurants and bars, and cater to similar customers, namely,

---

[3] The Court also takes note that Plaintiff expressly disclaimed the "Sports Grill" descriptor in its trademark application [ECF No. 50-1].

those who enjoy a sports bar venue for their restaurant experience" [ECF No. 47, at 17]. This Court therefore adopts and affirms the Magistrate Judge's finding as to the similarity of the parties' retail outlets and customers.

### v. Similarity of Advertising Media

Plaintiff objects to the Report and Recommendation on the basis that the parties use similar advertising media (i.e., social media) [ECF No. 50, at 7]. In the Report and Recommendation, the Magistrate Judge notes that "Plaintiff proffered testimony from Perrin regarding its advertising media" but failed to present any "evidence regarding what advertising media Defendants use" [ECF No. 47, at 17]. However, based on a review of the record evidence in this case, this Court finds that Defendants, like Plaintiff, also advertised on social media [ECF No. 56 at 85] [Defendants' State Court Complaint for Declaratory & Injunction Relief].

Accordingly, the Court **SUSTAINS** Plaintiff's objection.

### vi. Defendants' Intent

Plaintiff also objects to the Report and Recommendation on the basis that the Defendants adopted Plaintiff's mark with the intention of deriving a benefit from Plaintiff's business reputation [ECF No. 50, at 7]. In the Report and Recommendation, the Magistrate Judge found: (i) Defendants acted under the belief that they could use Sandbar Marks as long as they complied with the ten-mile Restricted Area (Def. Ex. 3) and (ii) all parties were aware of, and made no objection to, the Sandbar Sports Grills operating in Cocoa Beach and Key West. [ECF No. 47, at 18]. According to the Magistrate Judge, as a result, there was "no basis to attribute to Defendants the intent to profit from Canes' business reputation." *Id.*

While "objective factors are most important in assessing the likelihood of confusion between two marks, courts also examine the defendant's subjective intent." *John H. Harland Co.*, 711 F.2d at 977. While the record here does not have any direct evidence of Defendants'

intent, there is some evidence that infers Defendants adopted the Sandbar Marks "with the intent of deriving benefit from the reputation of the plaintiff." *Id.* As the Magistrate Judge found, Sandbar Sports Grill in Coconut Grove, which opened in 1999, has "won awards from various local newspapers and blogs," including the New Times Sports Bar of the Year Award, which it has won multiple times, as recently as 2017 [ECF No. 47 ¶ 7]. Additionally, this Court notes the striking similarities between the logos (*see supra.* at I), which include the same lettering in the name, Sandbar Sports Grill, the same life preserver (and corresponding colors), with the same individual on the same beach chair under the same beach umbrella. As "[t]here is nothing unusual about a finding of intent based on circumstantial evidence," this Court finds there is sufficient circumstantial evidence to support a finding that Defendants intended to derive a benefit from Plaintiff's reputation, namely, the reputation of the Sandbar Sports Grill in Coconut Grove. *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1543 (11th Cir. 1986). While the Court notes that both Defendant Longo and Defendant Borrero believed they could use the Sandbar Name outside the ten-mile restriction [ECF No. 47 ¶¶ 44, 48], Paragraph 11.8 of the Shareholder Agreement only addresses use of the Sandbar Sports Grill *name*.

Accordingly, the Court **SUSTAINS** Plaintiff's objection and finds there is record evidence to support a finding that Defendants intended to derive a benefit from Plaintiff's reputation.

### vii. Actual Confusion

Here, Plaintiff objects to the Magistrate Judge's finding that "Plaintiff's submission of social media postings" were hearsay, and therefore, inadmissible [ECF No. 47, at 18]. "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise*

*Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quotations omitted). The narrow issue before this Court is whether it can consider hearsay evidence for the purposes of deciding actual confusion.[4] With respect to the evidence in question, "messages and posts" by allegedly "confused consumers," at least one court has considered testimony regarding the receipt of "reports of alleged confusion" as non-hearsay. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 719-720 (3d Cir. 2004).

In *Kos*, the Third Circuit found that receipt of these "numerous and varied reports of alleged confusion" were a "factual claim" that had "independent evidentiary significance tending to show actual confusion." *Id.* Moreover, with respect to the actual messages and posts, other courts have considered out-of-court statements when such statements were offered to show a declarant's state of mind. *See Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006) (citing *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 933, 1003-04 (2d Cir. 1997), *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1160 n. 10 (5th Cir. 1982), *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 133 (3d Cir. 2004), *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001)).

Turning to the record in this action, this Court finds that there is testimony by Plaintiff's principal, Mr. Perrin, which shows that he received reports of confusion, by way of posts and messages. At the evidentiary hearing, Mr. Perrin testified that he oversaw Sandbar Sports Grill's (Coconut Grove) social media accounts and had the administrative passwords for said accounts [ECF No. 48, at 12:23-25, 13:1-4). During his testimony, he was shown "a collection of a lot of the social media messages or posts or – mostly messages and posts that were all either sent or

---

[4] In *Ferrellgas Partners, L.P. v. Barrow*, the district court excluded evidence of actual confusion as "hearsay," but, on appeal, the Eleventh Circuit did not reach "whether the district court abused its discretion in excluding evidence of actual confusion as hearsay." 143 Fed. Appx. 180, 190 (11th Cir. 2005).

directed towards Sandbar Coconut Grove, and they all show confusion over the Sandbar in Cutler Bay." *Id.* at 13:23-25, 14:1. While this Court notes the Magistrate Judge sustained hearsay objections as to the admissibility of the collection of social media posts and messages to prove actual confusion, the Magistrate Judge did allow said collection as evidence that Mr. Perrine received them. *Id.* at 17:8-10.

This Court will consider the evidence that Mr. Perrine received reports of confused consumers [ECF No. 37-1, Pl.'s Ex. 4]. Like in *Kos*, Mr. Perrine received "numerous and varied reports of alleged confusion" and the "factual claim[s]" shown therein have "independent evidentiary value tending to show actual confusion." *Kos*, 369 F.3d at 719-720. Moreover, after a review of the proffered collection of posts and messages, this Court will consider them as probative of the declarant's state of mind. These social media posts and messages included but are not limited to: (1) a request to Sandbar Sports Grill (Coconut Grove) to have "a relief drive at the Cutler Bay location" (*id.* at 5); (2) customer inquiries as to whether Sandbar Sports Grill is opening a location in Cutler Bay (*id.* at 6-7); (3) employment inquiries (*id.* at 8-9) and at least one customer post stating he was "[g]etting a sandbar in cutler bay (sic) !!!" (*id.* at 17).[5] Thus, this Court will consider the postings as evidence of actual confusion, as they show the declarants', or in this case, the social media posters' state of mind. *Conversive*, 433 F. Supp. 2d at 1091.

Even assuming arguendo that the foregoing social media posts or messages are hearsay, this Court finds that, at this juncture in the proceedings, it may rely on "hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co.,* 51 F.3d at

---

[5] With respect to the number of confused consumers, the Eleventh Circuit has stated that "[a]ctual confusion by a few customers is the best evidence of likelihood of confusion by many customers." *Freedom Sav.*, 757 F.2d at 1185.

985.

Accordingly, the Court **SUSTAINS** Plaintiff's objection.

### viii. Analysis

All seven factors favor Plaintiff. Notably, Defendants do not object to the Magistrate Judge's finding that three of the seven factors (similarity of marks, similarity of the products the marks represent, and similarity of the parties' retail outlets and customers) favor Plaintiff [ECF No. 49]. In light of this Court sustaining Plaintiff's objections to the remaining factors (type of mark, similarity of advertising media, defendants' intent, and actual confusion) and the Court's findings herein, all factors are in favor of Plaintiff.

Accordingly, the Court **SUSTAINS** Plaintiff's objection. This Court finds that Plaintiff has proven, by a preponderance of the evidence, a likelihood of success on the merits. *Frehling Enters.,* 192 F.3d at 1335.

### B. Irreparable Harm

The Eleventh Circuit "[extends] a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008). *See also E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (irreparable injury is presumed for trademark infringement). "This Circuit has held that 'a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co., S.A.*, 756 F.2d at 1530). As stated, the Court has made a finding that Plaintiff has shown a "likelihood of success on the merits." First, Defendants do not object that Plaintiff has priority in the use of the Sandbar Marks. Second, all factors favor Plaintiff and a finding by this Court that there is a

likelihood of consumer confusion. Defendants do not object that three of the consumer confusion factors (similarity of marks, similarity of the products the marks represent, and similarity of the parties' retail outlets and customers) favor Plaintiff [ECF No. 49].

Accordingly, the Court **SUSTAINS** Plaintiff's objection and finds that Plaintiff "has presented a sufficiently strong showing of likely confusion so that irreparable harm is established." *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005).

### C. Balancing of the Equities

Since the Court has sustained Plaintiff's objections as to (1) Likelihood of Success on the Merits and (2) Irreparable Harm, this Court finds that a balancing of the equities in this case favor Plaintiff. Notably, the Court's findings with respect to Plaintiff's priority and the factors favoring Plaintiff with respect to customer confusion tip the balance of the equities in favor of Plaintiff. Plaintiff's Sandbar Sports Grill in Coconut Grove has been in business since 1999 and Sandbar Sports Grill in Cutler Bay opened in January 2018 [ECF No. 47 ¶ 4, 43]. Any harm occasioned by enjoining Defendants' use of the Sandbar Marks is "therefore outweighed by the potential damage to" Plaintiff's reputation by Defendants' use of its "confusingly similar mark." *Ferrellgas Partners, L.P.*, 143 Fed. Appx. at 191.

Accordingly, the Court **SUSTAINS** Plaintiff's objection.

### D. Public Interest

Since this Court has sustained Plaintiff's objections as to (1) Likelihood of Success on the Merits, (2) Irreparable Harm and (3) Balancing of the Equities, this Court finds that "the public interest is served by eliminating confusion in the marketplace." *See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1316 (S.D. Fla. 2010) (citing *SunAmerica Corp. v. SunLife Assurance Co. of Can.*, 77 F.3d 1325, 1334 (11th Cir. 1996)).

Accordingly, the Court **SUSTAINS** Plaintiff's objection.

## IV. Conclusion

After careful consideration of the foregoing, it is hereby:

**ADJUDGED** that the United States Magistrate Judge's Report and Recommendation [ECF No. 47] is **AFFIRMED IN PART and MODIFIED IN PART,** and **ADOPTED except as stated herein.** Defendants' objection is **SUSTAINED** and Plaintiff's objections are **OVERRULED IN PART** and **SUSTAINED IN PART** as stated herein.[6]

Accordingly, it is:

**ORDERED AND ADJUDGED** that

1. Plaintiff's Motion for Preliminary Injunction is **GRANTED**.

2. The Court will issue a separate order enforcing the preliminary injunction.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of September, 2018.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record

---

[6] The Court also notes Plaintiff filed additional objections to "certain actual findings" [ECF No. 50, at 17-19]. To the extent that such objections are not addressed by this order, the Court once more notes that "[f]indings made on an application for preliminary injunction are not controlling at a later hearing on a permanent injunction." *Popular Bank of Florida*, 9 F. Supp. 2d at 1353 (citing *E. Remy Martin & Co.*, 756 F.2d at 1527 n. 1).